**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

_____

IN RE
ANCTIL PLUMBING & MECHANICAL          Chapter 7
CONTRACTORS, INC.,                            Case No. 05-17495-WCH
       DEBTOR
_____

IN RE
ANCTIL LEASING, LLP,                              Chapter 7
       DEBTOR                                        Case No. 05-21832-WCH
_____

IN RE
ROBERT ANCTIL,                                     Chapter 7
       DEBTOR                                        Case No. 05-21817-WCH
_____

**MEMORANDUM OF DECISION**

**I. INTRODUCTION**

The matter now before the Court is the Response of Gordon N. Schultz to [the] March 10, 2009 Order to Show Cause (the "Response") filed by Gordon N. Schultz ("Schultz"), the Chapter 7 Trustee's Reply to the Response (the "Trustee's Reply") filed by Donald R. Lassman (the "Trustee"), the Chapter 7 trustee of the estates of Anctil Plumbing & Mechanical Contractors, Inc. (the "Corporation"), Anctil Leasing, LLP ("Leasing"), and Robert Anctil ("Anctil") (collectively, the "Debtors"), Schultz's Limited Motion for Reconsideration of Order on Fee Application (the "Motion for Reconsideration"), and the Trustee's Response to the Motion for Reconsideration (the "Trustee's Response). On March 10, 2009, in light of the Memorandum of Decision issued in this

1

case on that same date, the Court ordered Gordon Schultz ("Schultz") to show cause "why the Court should not impose sanctions pursuant to Fed. R. Bankr. P. 9011(c) against him for the advancement of claims, defenses, and other legal contentions not warranted by existing law and previously ruled upon by this Court in a related adversary proceeding."[1] On March 20, 2009, Schultz filed the Response to the order to show cause (the "OSC"), as well as the Motion for Reconsideration, asserting sanctions are not appropriate because I erroneously denied his fees for preparing a fee application post-conversion. For the reasons set forth below, I will deny reconsideration and impose sanctions against Schultz in the amount of $10,000, payable to the Clerk of the Bankruptcy Court.

## II. BACKGROUND

By way of background, the Corporation filed a voluntary Chapter 11 petition on August 19, 2005, and Leasing filed its Chapter 11 case on October 11, 2005. On November 8, 2005, the two cases were substantively consolidated. Anctil's individual case was filed under Chapter 7 on October 13, 2005. In January, 2006, Anctil moved to convert his case to Chapter 11 and jointly administer it with the consolidated case. The motion was granted on January 20, 2006. On March 20, 2008, the consolidated case, as well as Anctil's jointly administered case, was converted to Chapter 7 upon an uncontested motion filed by the United States Trustee.

Schultz filed each case on behalf of the Debtors. He was subsequently employed as counsel for the Corporation on September 19, 2005, and as counsel to Anctil on April 4, 2006. On February 19, 2008, four days after the United States Trustee filed an Amended Motion to Convert, the Corporation paid Schultz $2,500 by a check drawn from the Corporation's debtor-in-possession account (the "Chapter 7 Retainer"). Schultz subsequently filed two statements disclosing that the

---

[1] Docket No. 395.

Corporation paid $2,500 to Schultz as a "flat fee retainer" and that Anctil agreed to a fee of $2,500, of which nothing was paid.  On May 21, 2008, the Trustee filed an adversary proceeding seeking turnover under 11 U.S.C. § 542 or recovery of the Chapter 7 Retainer as an unauthorized post-petition transfer under 11 U.S.C. §§ 549 and 550, asserting that Schultz was not entitled to be paid from estate funds under 11 U.S.C. § 330(a)(1) because he was not employed by the Trustee.[2] He also sought to surcharge the fees and costs of that proceeding against the balance of a pre-petition petainer paid to Schultz or, in the alternative, to surcharge those amounts against fees to be paid to Schultz in the principal case.

Schultz moved to dismiss the Trustee's complaint, arguing that the Chapter 7 Retainer was appropriately paid under the "flat fee retainer exception" recognized by *Lamie v. United States Trustee*[3] and the subsequent decision by Judge Gorton of this district in *In re CK Liquidation Corp.*[4] On September 15, 2008, I issued a Memorandum of Decision stating:

> [T]he Chapter 7 Retainer was, with a quiet nod to *Lamie*, denominated as a flat fee retainer.  This, however, is an inadequate invocation of the exception as the Chapter 7 Retainer had been paid not only pre-conversion, but *post-filing*, and that makes all of the difference.  When the petition is filed, property of the estate comes into being. *Lamie* expressly states that 11 U.S.C. "§ 330(a)(1) does not authorize compensation awards to debtors' attorneys from estate funds unless they are employed as authorized by § 327."  While perhaps a bit confusing on its face, this statement is completely consistent with the previously quoted dicta on which Schultz relies.  The Supreme Court's conclusion that "[s]ection 330(a)(1) does not prevent a debtor from engaging counsel before a chapter 7 conversion and paying reasonable compensation in advance to ensure that the filing is in order," simply does not mean that 11 U.S.C. § 330(a)(1) specifically authorizes such a payment from property of the estate.  Rather, it implicitly recognizes that individual debtors may have "property of the

---

[2] *See Lassman v. Schultz*, Adv. P. No. 08-1131.

[3] *Lamie v. United States Trustee*, 540 U.S. 526 (2004).

[4] *Morse v. Ropes & Gray (In re CK Liquidation Corp.)*, 343 B.R. 376 (D. Mass. 2006).

3

debtor" made up of exempt assets form [sic] which they could pay counsel for legal services performed in advance of a conversion to Chapter 7 while a bankruptcy case is pending under another chapter.[5]

Finding Schultz's position meritless, I denied the motion to dismiss and entered judgment for the Trustee. Moreover, I approved Trustee's request to surcharge his fees in the amount of $4,987.50 against Corporation's pre-petition retainer.

On November 24, 2008, Schultz filed two fee applications: one with respect to the Corporation (the "Corporate Fee Application") and one with respect to Anctil (the "Individual Fee Application"). As part of the Corporate Fee Application, Schultz sought payment of $8,910 for 48.4 hours spent preparing the Corporate Fee Application between November 9, 2008, and November 24, 2008, over seven months after the case's conversion to Chapter 7.[6] In the Individual Fee Application, Schultz requested fees in the amount $7,075 and reimbursement of expenses of $859 for services rendered during Anctil's original Chapter 7 before its conversion to Chapter 11. Additionally, Schultz sought $1,375 for services rendered preparing the Individual Fee Application, but did not support these fees with any time entries.

The Trustee objected to the fees incurred preparing the Corporate Fee Application on the basis that they were unreasonable and excessive and that no more than $1,500 was warranted as compensation for this task. Schultz responded that the additional time spent was reasonable because the local rules of this district required him to categorize his time entries, but his billing software would not allow him to do so and required manual re-entry. The Trustee also objected to the fees

---

[5] *Lassman v. Schultz (In re Anctil Plumbing & Mech. Contractors, Inc.)*, 394 B.R. 1, 7 (Bankr. D. Mass. 2008) (footnotes omitted).

[6] *See* Docket No. 353, Ex. 1-P.

4

incurred prior to Anctil's conversion to Chapter 11, arguing that my decision in *Lassman v. Schultz* determined that such fees are precluded under *Lamie*. Schultz, without citing any authority, asserted that *Lamie* was inapplicable because no retainer was involved. Moreover, he contended that the services rendered were in contemplation of conversion to Chapter 11 and are the type of "pre-filing services" that are normally compensable in a Chapter 11 case. The Trustee did not object to the fees incurred preparing the Individual Fee Application, but due to mathematical errors in the fee application, it is unclear whether the Trustee was aware of the request.[7]

On March 10, 2009, I issued a Memorandum of Decision (the "Memorandum") regarding the fee applications.[8] In the absence of an objection, I approved fees incurred during the Chapter 11 cases, but found that the request for fees incurred during Anctil's original Chapter 7 case (the "Pre-Conversion Fees") was merely a variation of the same issue addressed in *Lassman v. Schultz*.[9] Denying these fees, I stated:

> [T]he Supreme Court of the United States held that 11 U.S.C. § 330(a)(1) does not authorize compensation awards to debtors' attorneys from estate funds unless they are employed under 11 U.S.C. § 327.
>
> * * *
>
> First, *Lamie*'s holding is unequivocal. There is no basis to conclude that the language of 11 U.S.C. § 330(a)(1), which the Supreme Court found unambiguous, ceases to apply when debtor's counsel renders services in contemplation of conversion. To the contrary, *Lamie* expressly states that *"[u]nless the applicant for compensation is in one of the named classes of persons in the first part [of 11 U.S.C. § 330(a)(1)], the kind of service rendered is irrelevant."* Second, *Lamie*'s holding

---

[7] The Trustee also objected to the total fee amount on the basis that it was miscalculated.

[8] *In re Anctil Plumbing & Mech. Contractors, Inc.*, No. 05-17495-WCH, 2009 WL 691017 (Bankr. D. Mass. Mar. 10, 2009).

[9] *Id.* at *5-6.

5

is not restricted to retainers or post-conversion services. Again, the language of 11 U.S.C. § 330(a)(1) extends to all Chapter 7 cases, regardless of if, or when, the case is converted. Third, Schultz's argument ignores the fact that conversion of a case from one chapter to another does not affect the petition date so as to render the conversion a new filing. Although pre-conversion services in many cases may be analogous to those performed pre-petition in contemplation of a new filing, the former are subject to the rules and restrictions imposed by an already pending bankruptcy case.[10]

I similarly denied Schultz's fees incurred preparing the Corporate Fee Application (the "Post-Conversion Fees") because the services were rendered after the Debtors' conversion to Chapter 7.[11] Citing *In re CK Liquidation Corp.*, I noted that although the fees related to the Chapter 11 case, Schultz's employment, and therefore his entitlement to compensation from the estate, had been terminated by the conversion to Chapter 7.[12] I also denied Schultz's fees incurred preparing the Individual Fee Application because they were not supported by any time entries as required by the provisions of Massachusetts Local Bankruptcy Rule ("MLBR") 2016-1(a)(1)(C).[13]

On the same date, I ordered Schultz to show cause "why the Court should not impose sanctions pursuant to Fed. R. Bankr. P. 9011(c) against him for the advancement of claims, defenses, and other legal contentions not warranted by existing law and previously ruled upon by this Court in a related adversary proceeding" on the basis that: (1) the Fee Application and Schultz's defense of its charges essentially re-asserted the same issues and arguments resolved in *Lassman v. Schultz*; (2) those arguments were found frivolous, unsupported by the very authority he cited, and warranted

---

[10] *Id.* at *5 (emphasis added) (footnotes omitted).

[11] *Id.* at *6.

[12] *Id.*

[13] *Id.*

the imposition of sanctions in the amount of $4,987.50; (3) Schultz cited no authority supporting his defense of the fee applications and, in fact, admitted there was no such authority; and (4) Schultz's arguments in defense of the fee applications were expressly precluded by *Lamie*.[14] Schultz filed the Response[15] and Motion for Reconsideration on March 20, 2009, and the Trustee filed the Trustee's Reply and Trustee's Response the following day.

On March 25, 2009, I conducted a hearing on the order to show cause and Motion for Reconsideration. After hearing arguments from Schultz, the Trustee, and the United States Trustee, I took the matter under advisement. Both Schultz and the Trustee filed supplemental briefs. Notably, in his supplemental brief, the Trustee represented that the estates of both the Corporation and Anctil are administratively insolvent and have been since Schultz filed his fee applications.

### III. POSITION OF THE PARTIES

#### Schultz

In the Response, Schultz argues that he should not be sanctioned for requesting the Pre-Conversion Fees because he believed that my ruling in *Lassman v. Schultz* was limited to mean that he could not be paid for any services relating to the Chapter 7 proceeding because he had not been employed under 11 U.S.C. § 327 as required by *Lamie*. In pressing his claim for Pre-Conversion Fees, Schultz believed that the scope of his Chapter 11 services could include those relating to the Chapter 11 conversion. After reading the Memorandum, Schultz now understands that this is a "bright line" test not based upon "the nature of the services rendered," but simply a temporal

---

[14] Docket No. 395.

[15] I note that the arguments from the Motion for Reconsideration are included in the Response as cause why Schultz should not be sanctioned.

7

analysis. He further notes that the issue in *Lassman v. Schultz* was not framed in this context because the services there related to the Chapter 7 proceeding. Schultz requests my indulgence with respect to this mistake because he has already lost approximately $7,000 in addition to the prior sanction of nearly $5,000.

With respect to the Post-Conversion Fees, Schultz seeks reconsideration asserting that my ruling is unfair and that the principles of *Lamie* and the ruling in *In re CK Liquidation Corp.* should not preclude him from being awarded a reasonable fee for preparing the Corporate Fee Application simply because it was done after the case was converted to one under Chapter 7. In support of this contention, Schultz first notes that Judge Gorton "included a significant comment about the 'uncertainty' of arguing such a position under *Lamie*,"[16] by observing that the United States Trustee "expressed uncertainty as to whether [the expenses incurred preparing the Final Application were] disputable under *Lamie* or for some other reason."[17] Second, he asserts that Judge Gorton denied the fee application for all post-conversion services without articulating a separate position on the appropriateness of doing so with respect to the fee application issue. Third, Schultz contends Judge Gorton did not consider that the time spent preparing a fee application is not a legal service rendered to the Debtor, but a necessary undertaking mandated by the Bankruptcy Code and rules. He submits that while *Lamie* states that "'the kind of services rendered' should be 'irrelevant,'" this statement must be examined in the context of the types of services that were at issue before the Supreme Court of the United States.[18] As such, Schultz contends that *Lamie*'s holding only states that there will be

---

[16] Docket No. 418 at ¶ 3.

[17] *In re CK Liquidation Corp.*, 343 B.R. at 379.

[18] Docket No. 418 at ¶¶ 7-8.

no distinction between legal services performed for a Debtor.

Schultz relies on *In re Johnson*,[19] a bankruptcy court decision from the Eastern District of California, for the proposition that courts have adopted the position that *Lamie* does not preclude a fee award for a fee application prepared post-conversion. In that case, debtor's counsel sought, and the United States Trustee expressly did not oppose, fees incurred preparing a fee application after the appointment of the Chapter 11 trustee. While the *Johnson* court resolved the issue by allowing the Chapter 11 trustee to employ debtor's counsel for a transitional period under 11 U.S.C. § 327(e), Schultz represented that he contacted the debtor's counsel and the United States Trustee and both viewed *Lamie* as inapplicable to the issue of fees incurred preparing a fee application.

Ultimately, Schultz strenuously argues that adopting a reading of *Lamie* that precludes payment of fees incurred preparing a fee application simply because it was prepared post-conversion would be entirely inconsistent with the substantial pre-*Lamie* precedent. He contends that the preparation of a fee application, as a requirement set forth in the Bankruptcy Code, must be compensable regardless of when it was prepared. Indeed, relying on *In re Braswell Motor Freight Lines, Inc.*[20] and *In re Nucorp Energy, Inc.*,[21] Schultz suggests I abused my discretion by denying him reasonable compensation for time spent preparing the Corporate Fee Application. Lastly, he notes that such a result is consistent with the policy behind *Lamie*, which he understands to be the elimination of duplicative fees between debtor's counsel and the Chapter 7 trustee.

---

[19] *In re Johnson*, 397 B.R. 486 (Bankr. E.D. Cal. 2008).

[20] *Braswell Motor Freight Lines, Inc. v. Crutcher (In re Braswell Motor Freight Lines, Inc.)*, 630 F.2d 348 (5th Cir. 1980).

[21] *In re Nucorp Energy, Inc.*, 764 F.2d 655 (9th Cir. 1985).

The Trustee

The Trustee opposes the Motion for Reconsideration contending that the district court's decision in *In re CK Liquidation Corp.* is directly on point and fully supports the Memorandum. The Trustee asserts that Judge Gorton expressly considered whether Chapter 11 services rendered, as a temporal matter, after the conversion date may nonetheless be compensable Chapter 11 services, but unambiguously rejected the argument. Moreover, the Trustee contends that in denying the request for post-conversion fees, including those incurred preparing a fee application, Judge Gorton acknowledged *Lamie*'s holding places debtor's counsel in a difficult position by potentially requiring additional services to be performed after counsel's employment has been terminated.

During oral arguments, the Trustee indicated that he was unfamiliar with *In re Johnson*, but argued that it was inappropriate to cite a position advanced before a different court in another circuit as authority. In any event, he asserted that *In re Johnson* is irrelevant because there is case law in this district precluding such a position. Therefore, the Trustee suggests, Schultz's reliance on *In re Johnson* is, in fact, yet another advancement of a legal contention not warranted by existing law and barred by my prior rulings.

In sum, the Trustee expresses considerable frustration that the estates have been forced to litigate and re-litigate the same issues with respect to Schultz's fees when it was clear from the outset that any dividend on his administrative expense claim would be minimal. Ultimately, the Trustee contends that it makes no difference whether I grant the Motion for Reconsideration because the estates are administratively insolvent and Schultz's distribution will be zero. Therefore, in the event that I find sanctions warranted, he requests that I allow sanctions against Schultz in the amount of $1,150 in favor of Anctil's estate and $3,575 in favor the Corporate estate, representing the Trustee's

10

time spent opposing the fee applications and the Motion for Reconsideration.

### The United States Trustee

While the United States Trustee did not file a response to either fee application or the Motion for Reconsideration, counsel appeared at the March 25, 2009 hearing in opposition to the reconsideration of the Post-Conversion Fees, relying on the United States Trustee's original brief filed in *Lassman v. Schultz*. As such, the United States Trustee similarly asserts that Schultz's arguments are barred by *Lamie* and *In re CK Liquidation Corp*. The United States Trustee did not take a position on the appropriateness of sanctions.

## IV. DISCUSSION

### A. The Motion for Reconsideration

The standard for reconsideration is well established in this district. Under Fed. R. Civ. P. 59(e), I may reconsider a judgment upon the filing of a motion by a party within ten days of the entry of the judgment.[22] To be clear, "[r]ule 59(e) motions are aimed at reconsideration, not initial consideration."[23] "It is not a vehicle for rehashing arguments previously made or for refuting the court's prior ruling."[24] Nor is it a substitute for an appeal.[25] Instead, "[t]o succeed on a motion to reconsider, the Court requires that the moving party show newly discovered evidence or a manifest

---

[22] *See* Fed. R. Civ. P. 59(e), made applicable to bankruptcy cases by Fed. R. Bankr. P. 9023.

[23] *Harley-Davidson Motor Co., Inc. v. Bank of New England-Old Colony, N.A.*, 897 F.3d 611, 616 (1st Cir. 1990) (*citing White v. New Hampshire Dept. of Employment Security*, 455 U.S. 445, 451 (1982)).

[24] *In re Mortgage Investors Corp.*, 136 B.R. 592, 597 (Bankr. D. Mass. 1992) (*quoting In re Grand Builders, Inc.*, 122 B.R. 673, 675 (Bankr. W.D. Pa.1990) (citations omitted)).

[25] *In re Oak Brook Apartments*, 126 B.R. 535, 536 (Bankr.S.D.Ohio 1991).

error of fact or law."[26]

The main thrust of Schultz's argument on reconsideration is that *Lamie* should not be applied to the question of whether counsel is entitled to a reasonable fee for preparing a fee application post-conversion because such an extension of the holding is neither fair nor intended. While perhaps unfair, *Lamie*'s holding most certainly applies and is unequivocal. To reiterate, I again quote the relevant passages of *Lamie*:

> A debtor's attorney not engaged as provided by § 327 is simply not included within the class of persons eligible for compensation. . . .  Unless the applicant for compensation is in one of the named classes of persons in the first part [of 11 U.S.C. § 330(a)(1)], the kind of service rendered is irrelevant.
>
> * * *
>
> Adhering to conventional doctrines of statutory interpretation, we hold that § 330(a)(1) does not authorize compensation awards to debtors' attorneys from estate funds, unless they are employed as authorized by § 327. If the attorney is to be paid from estate funds under § 330(a)(1) in a Chapter 7 case, he must be employed by the trustee and approved by the court.[27]

I note that the Supreme Court does not state that the kind of service rendered *should be* irrelevant as Schultz suggests, but that it *is* irrelevant.

Schultz advances several flawed theories in an apparent effort to circumvent *Lamie*'s express language. First, he attempts to characterize preparation of a fee application as a necessary undertaking mandated by the Bankruptcy Code and Rules and not a legal service rendered to the Debtor. Section 330(a)(1)(A) encompasses "actual, necessary services" and does not distinguish

---

[26] *In re Wedgestone Fin.*, 142 B.R. 7, 8 (Bankr. D. Mass. 1992) (citations omitted).

[27] *Lamie*, 540 U.S. at 535, 538.

12

services rendered to the debtor from other services.[28] Moreover, this argument ignores the fundamental principle that a pre-requisite to payment under 11 U.S.C. § 330(a)(1)(A) is authorized employment under 11 U.S.C. § 327. If Schultz means to suggest that preparation of a fee application is not a "service" as that term is used within 11 U.S.C. § 330(a)(1)(A), there would be no basis to award compensation at all.

Second, Schultz misapprehends the policy behind *Lamie* as simply the elimination of duplicative fees between the Chapter 7 trustee and debtor's counsel. To the extent that the Supreme Court recognized a policy behind 11 U.S.C. §§ 327 and 330, it was to limit debtor's counsel from incurring fees and diminishing the estate without the Chapter 7 trustee's approval.[29] Additionally, Schultz's reliance on *In re Braswell Motor Freight Lines, Inc.* and *In re Nucorp Energy, Inc.* is misplaced because both predate the 1994 amendment to 11 U.S.C. § 330 by at least ten years.[30] If *Lamie* is inconsistent with the law as it previously existed, the reason is obvious: Congress changed the law in 1994.

In a final effort to support the Motion for Reconsideration, Schultz relies on positions asserted by the United States Trustee in *In re Johnson* and *In re CK Liquidation Corp.* An argument

---

[28] 11 U.S.C. § 330(a)(1)(A).

[29] "Section 327's limitation on debtors' incurring debts for professional services without the Chapter 7 trustee's approval is not absurd. In the context of a Chapter 7 liquidation it advances the trustee's responsibility for preserving the estate." *Lamie*, 540 U.S. at 537.

[30] I further note that neither case involves a conversion to Chapter 7, and only addresses the issue of whether counsel is entitled to be compensated to prepare a fee application in a Chapter 11 (or in the case of *In re Braswell Motor Freight Lines, Inc.*, Chapter XI) case. Moreover, while a majority of cases agree that debtor's counsel is entitled to fees incurred preparing a fee application, *see, e.g., In re Bank of New England Corp.*, 134 B.R. 450 (Bankr. D. Mass. 1991), this proposition is not universal. *See, e.g., In re Rothman*, 206 B.R. 99 (Bankr. E.D. Pa. 1997); *In re Junco, Inc.*, 185 B.R. 215 (Bankr. E.D. Va. 1995).

advanced by a party in one case, however, is not authority to decide another. Regardless of what the parties' subjective understanding was with respect to the law in pressing their case, only the court's holding is authoritative. Here, neither holding supports reconsideration of the Post-Conversion Fees. In *In re Johnson*, the court approved the transitional employment of the debtor's counsel under 11 U.S.C. § 327(e), thus mooting any consideration of whether a fee application prepared post-conversion is a compensable service.[31] In contrast, Judge Gorton in *In re CK Liquidation Corp.*, while noting the United States Trustee's uncertainty,[32] concluded that *Lamie* barred compensation for *"[a]ny* services performed after the conversion date."[33] A separate position with respect to the post-conversion fees incurred preparing the fee application was unnecessary because those fees were necessarily encompassed by the breadth of the holding.[34]

---

[31] *In re Johnson*, 397 B.R. at 493.

[32] Nearly all written decisions provide at least some statement of the parties' arguments. Accordingly, there is nothing "significant" about Judge Gorton's acknowledgment of the United States Trustee's uncertainty in that case. In any event, Judge Gorton's holding precludes such uncertainty in the future.

[33] *In re CK Liquidation Corp.*, 343 B.R. at 385 (emphasis added).

[34] The Trustee correctly notes that Judge Gorton considered the effect of applying *Lamie* to all fees incurred post-conversion, including those incurred preparing fee applications:

> Although the Court acknowledges that its decision may place bankruptcy counsel in the difficult position of choosing between performing fiduciary obligations to clients despite the potential for nonpayment and risking professional malpractice claims, it is bound by the Supreme Court's interpretation of the Bankruptcy Code that when a bankruptcy court converts an action from Chapter 11 to a Chapter 7 proceeding and appoints a Chapter 7 Trustee,
>> this [action] terminate[s] [the debtor's] status as debtor-in-possession and so terminate[s] [counsel's] service under § 327 as an attorney for the debtor-in-possession.

*Id.* at 385 (*quoting Lamie*, 540 U.S. at 532).

Not only does the Motion for Reconsideration fail to identify a material error of fact or law, it asserts, for the third time, an unwarranted entitlement to fees in a Chapter 7 case despite *Lamie*'s clear holding and his lack of employment under 11 U.S.C. § 327. As such, I will deny the Motion for Reconsideration.[35]

B. The Order to Show Cause

1. The Appropriateness of Sanctions

Fed. R. Bankr. P. 9011 "emphasizes responsible behavior on the part of [attorneys]" and requires them "to conduct [themselves] in a manner bespeaking reasonable professionalism and consistent with the orderly functioning of the judicial system."[36] It provides in relevant part:

> (b) Representations to the court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the

---

[35] Even if cause existed reconsider the Post-Conversion Fees on their merits, they would still be denied on other grounds. As stated in Footnote 29 of the Memorandum, Exhibit 1-P is simply a chart of time spent per day on the Corporate Fee Application and does not identify the specific tasks performed as required by MLBR 2016-1(a)(1)(C). Additionally, time spent re-entering his billing invoices into spreadsheets is non-compensable. *In re ACT Mfg., Inc.*, 281 B.R. 468, 485 (Bankr. D. Mass. 2002) ("By now professionals who routinely practice before bankruptcy courts should be well versed in the requirements for time keeping and should have tailored both their individual time-keeping practices and their computer billing systems accordingly. As a result a professional should not have to expend time to "rearrange" time entries into separate categories or to fix other time-keeping problems such as "lumping" of time or the supplementation of inadequate entries. The preparation of a fee application should be primarily a ministerial task.") Moreover, because Schultz "lumped" the time spent preparing the spreadsheets with the time spent preparing the Corporate Fee Application by failing to describe the discrete tasks performed, it is impossible to simply cut the non-compensable portion of the request. As fee applications are filed at the applicant's peril, Schultz is not entitled to amend the Corporate Fee Application to correct these problems. *See In re Bank of New England Corp.*, 134 B.R. at 467-468.

[36] *Featherston v. Goldman (In re D.C. Sullivan Co., Inc.)*, 843 F.2d 596, 598 (1st Cir. 1988), *aff'd in part on rehearing en banc*, 878 F.2d 1478 (1989).

> circumstances,--
>
> * * *
>
> > (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law . . .[37]

Under Fed. R. Bankr. P. 9011, the focus is not whether the claim asserted was frivolous, but whether the attorney conducted an adequate inquiry into the facts and law before filing the claim.[38] "In examining the actions of counsel, the First Circuit has stated that '[s]ubjective good faith is not the issue; generally, Rule 9011 demands that counsel's actions comport with an objective standard of lawyerly performance.'"[39] Accordingly, "[a] violation of Rule 11 . . . might be caused by inexperience, incompetence, willfulness, or deliberate choice."[40]

On three occasions, Schultz advanced arguments regarding an entitlement to fees from the estate in a Chapter 7 case despite a lack of authorized employment under 11 U.S.C. § 327, as required under *Lamie*. Each time, I rejected his arguments by quoting the very cases upon which he relied. By citing a case, an attorney is presumed to have read it in its entirety. Under an objective standard, any attorney reading *Lamie* would reasonably understand that employment under 11 U.S.C. § 327 is a pre-requisite to compensation under 11 U.S.C. § 330(a)(1), regardless of the kind of

---

[37] Fed. R. Bankr. P. 9011(b)(2).

[38] *See Matter of Excello Press, Inc.*, 967 F.2d 1109, 1111-1112 (7th Cir. 1992).

[39] *Parker v. Boston Univ. (In re Parker)*, 334 B.R. 529, 538 (Bankr. D. Mass. 2005) (*quoting In re D.C. Sullivan Co., Inc.*, 843 F.2d at 599).

[40] *Sylver v. Sec. Pac. Servs. (In re Sylver)*, 214 B.R. 422, 428 (B.A.P. 1st Cir. 1997) (*quoting Cruz v. Savage*, 896 F.2d 626, 631 (1st Cir. 1990)).

service rendered. Given the plain, unequivocal language used by the Supreme Court in *Lamie*, such a conclusion is inescapable.

Schultz's explanation that he innocently misunderstood the scope of *Lamie* is unreasonable under the circumstances and undercut by his concurrent request for reconsideration.[41] Despite Trustee's objection, which quoted the relevant passage of *Lamie* and put him on notice of his error, Schultz nonetheless pursued the Pre-Conversion Fees without citing supporting authority and conceding none existed. Instead, without addressing the text emphasized by *Lassman v. Schultz* and the Trustee, he merely stated that *Lamie* was inapposite because he sought to establish an administrative claim without involving a retainer. The problem is apparent: *Lamie* involved only a fee application for post-conversion services and not a retainer. In further aggravation, the Response continued the same practice of citing and quoting portions of cases out of context, misrepresenting the holdings of cases, and arguing against the applicability of controlling authority without any legal basis.[42] Because these problems were identified in *Lassman v. Schultz*, the Memorandum, and the OSC, and Schultz still frivolously seeks reconsideration, I must conclude that he is proceeding with a deliberate indifference to the law. This present situation is analogous to that

---

[41] While the notice provisions of Fed. R. Bankr. P. 9011 preclude the imposition of sanctions based upon the Motion for Reconsideration at this time, I may consider the substantive arguments in support of reconsideration included in the Response to determine the appropriateness and amount of sanctions.

[42] To be clear, Schultz's arguments cannot be construed as "a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law" for several reasons. Fed. R. Bankr. P. 9011(b)(2). First, the arguments, as discussed in the Memorandum and above, are in fact frivolous. Second, in order to state a claim for the modification or reversal of existing law, one must first acknowledge the state of the law as it currently stands. *See White v. Burdick (In re CK Liquidation Corp.)*, 321 B.R. 355, 364-365 (B.A.P. 1st Cir. 2005). His persistent contention that *Lamie* is inapplicable precludes such a finding.

17

in *In re Willis Furniture Co., Inc.*,[43] where I found debtor's counsel violated Fed. R. Bankr. P. 9011 by filing a "fourth or fifth generation motion for reconsideration of a prior order which flies in the face of the precise wording of the Court of Appeals decision."[44] Therefore, under the totality of the circumstances, I find that Schultz's actions fall far below the standard imposed by Fed. R. Bankr. P. 9011.

        2.  The Imposition of Sanctions

Once a violation of Fed. R. Bankr. P. 9011 is found, the imposition of sanctions is mandatory.[45] Nonetheless, courts have the "discretion to tailor sanctions to the particular facts of the case . . . ."[46] All that is required by Fed. R. Bankr. P. 9011 is that the "sanction imposed for violation[s] of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated."[47] Otherwise, the sanction may consist of "directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation."[48]

Having found his position in *Lassman v. Schultz* without merit, I previously sanctioned Schultz (by surcharging the Trustee's fees against his) in the amount of $4,987.50. Nonetheless,

---

[43] *In re Willis Furniture Co., Inc.*, 148 B.R. 691 (Bankr. D. Mass. 1992).

[44] *Id.* at 694.

[45] *Business Guides, Inc. v. Chromatic Commc'ns. Ent., Inc.*, 498 U.S. 533, 543 (1991).

[46] *Figueroa-Ruiz v. Alegria*, 905 F.2d 545, 548 (1st Cir. 1990).

[47] Fed. R. Bankr. P. 9011(c)(2).

[48] *Id.*

in pursuing his fee applications, he continued to advance similar theories and positions precluded under the same authority. Then, in the face of the OSC, Schultz responded by seeking reconsideration of my prior order on equally frivolous grounds. Due to his persistence in this matter, I find that the imposition of additional monetary sanctions in the amount of $10,000 is necessary to deter future repetition of such conduct.[49] As these sanctions are imposed on the Court's own initiative, they shall be paid to the Clerk of the bankruptcy court.[50]

## V. CONCLUSION

In light of the foregoing, I will enter an order denying the Motion for Reconsideration and imposing sanctions in the amount of $10,000 payable to the Clerk of the Bankruptcy Court against Schultz.[51]

*/s/ William C. Hillman*

_____
William C. Hillman
United States Bankruptcy Judge

Dated: April 28, 2009

---

[49] *See In re Iappini*, 192 B.R. 8, 10 (Bankr. D. Mass. 1995) (doubling prior sanction for each subsequent instance of similar conduct).

[50] The Trustee's request for the sanctions to be paid to the Chapter 7 estates included in the Trustee's Reply does not comply with the separate motion requirement of Fed. R. Bankr. P. 9011(c)(1)(A).

[51] These sanctions are separate and distinct from any sanction previously imposed in this case.